## SNIDER v BOB THIBODEAU FORD, INC

1. PRODUCTS LIABILITY—DEFECT—EVIDENCE.

A plaintiff in a products liability action must produce evidence reasonably leading to the conclusion that the defendant has supplied a product which is defective and that this defect has caused injury to the plaintiff.

2. PRODUCTS LIABILITY—DEFECT—NORMAL USE—POLICY.

Products liability law rests on a policy giving the consumer a legally-enforceable right, as against the manufacturer, to proceed on the assumption that the product will serve in normal use without causing injury and, as a general rule, a product is defective if it does not fulfill this assumption.

3. PRODUCTS LIABILITY—DEFECT—FAULT.

Manufacturers are not insurers under products liability law; the concept of fault still exists, the term "defect" marking off the zone of the manufacturers responsibility.

4. PRODUCTS LIABILITY—DEFECT—MALFUNCTION—CIRCUMSTANTIAL EVIDENCE.

A demonstrable malfunction is generally clear evidence of a defect in a product, but the legal conclusion that a product is defective may follow from circumstantial evidence without the need physically to exhibit a loose part or structural weakness.

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability §§ 4, 9, 22, 23.
[2] 63 Am Jur 2d, Products Liability §§ 15, 130.
[3] 63 Am Jur 2d, Products Liability § 28.
[4] 63 Am Jur 2d, Products Liability § 15 et seq.
[5, 6] 63 Am Jur 2d, Products Liability §§ 63, 73.
[6, 8, 11–13] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 646–661.
Liability of manufacturer or seller for injury caused by automobile or other vehicle, aircraft, boat, or their parts, supplies, or equipment, 78 ALR2d 460.
[7, 8] 63 Am Jur 2d, Products Liability § 136.
[9] 63 Am Jur 2d, Products Liability §§ 22, 23.
[10, 11] 63 Am Jur 2d, Products Liability §§ 25–27.
[12, 13] 63 Am Jur 2d, Products Liability §§ 60, 61.

5. PRODUCTS LIABILITY—DEFECTIVE DESIGN—CIRCUMSTANTIAL EVI-
DENCE.

A product is defectively designed if the product is not reasonably
safe for the purposes for which it is intended; a design defect,
like a defect in manufacture, may be proved by circumstantial
evidence.

6. PRODUCTS LIABILITY—TRUCKS—BRAKES—MALFUNCTION—EVIDENCE.

Evidence tended to establish that the braking system supplied by
defendant manufacturer on plaintiff's truck was insufficient for
the use to which the vehicle was being put where plaintiff on
eight separate occasions reported a variety of brake difficulties
to defendant retailer, who made repairs; the retailer's service
manager sought advice from the manufacturer's service repre-
sentative, who advised that heavy duty brakes were required
for the use to which plaintiff's truck was being put, and a
claims adjuster for plaintiff's insurer found after an accident
that the brake pedal went to the floorboard without resistance,
corroborating plaintiff's testimony that the brakes had failed
thus causing the accident.

7. PRODUCTS LIABILITY—USE OF PRODUCT—USE LIMITATIONS.

A manufacturer's liability does not extend to injuries caused by
abuse of his product and he may at the time of sale expressly
limit, within reason, normal use of his product by establishing
use limitations.

8. PRODUCTS LIABILITY—USE OF PRODUCT—REASONABLENESS—QUES-
TION OF FACT.

Absent any express limitation by defendant manufacturer regard-
ing the use of its trucks, the question of whether plaintiff's use
of his truck was excessive is judged by the traditional reasona-
bleness test and the question of whether plaintiff's use of his
truck was a normal use for which the truck was intended was a
question of fact for the jury.

9. PRODUCTS LIABILITY—CONJECTURAL CAUSE—CIRCUMSTANTIAL EVI-
DENCE.

The rule on conjectural cause does not preclude the establish-
ment of a products liability claim with circumstantial evidence.

10. PRODUCTS LIABILITY—POSSIBLE TORTFEASORS—RESPONSIBILITY—EVI-
DENCE—BURDEN OF PROOF.

The burden in products liability cases of proving which of two
possible tortfeasors, the manufacturer or retailer, is responsible
for a defect in the product sold, generally is assigned to the
plaintiff; however, the courts will consider special circum-

stances when allocating the burden of proof in accordance with the general view that the placing of that burden is merely a question of policy and fairness based on experience in the different situations.

11. PRODUCTS LIABILITY—MANUFACTURER—RETAILER—RESPONSIBILITY —BURDEN OF PROOF.

The burden of negating individual responsibility for a brake failure in plaintiff's truck rested on the defendants truck manufacturer and truck retailer because of the technical problems involved in a brake system, the superior knowledge and expertise of the manufacturer, and the close relationship between the manufacturer and the retailer; consequently, a directed verdict in the manufacturer's favor at the close of plaintiff's evidence was error.

12. PRODUCTS LIABILITY—TRUCKS—TECHNICAL SERVICES BULLETIN— EVIDENCE—ADMISSIBILITY.

A technical services bulletin issued by defendant manufacturer of trucks to its retailers concerning the installation of new master brake cylinders on trucks of the class and year sold to plaintiff and recommending to the retailers that the new parts be installed for the appropriate vehicle when problems are encountered to reduce external hydraulic fluid leakage and to improve performance, was not admissible against the truck retailer to show his negligent maintenance of plaintiff's truck where the brake failure resulting in plaintiff's accident occurred on July 2, 1966, the last service of the vehicle by the retailer was June 30, 1966, and the bulletin was issued on July 1, 1966.

13. PRODUCTS LIABILITY—TRUCKS—TECHNICAL SERVICES BULLETIN— EVIDENCE—ADMISSIBILITY.

A technical services bulletin issued by defendant manufacturer to its retailers concerning trucks of the class and year sold to plaintiff indicating that the technical service changes recommended would "improve performance" may, on retrial, be admissible against the manufacturer to show its knowledge that the brake system in plaintiff's truck was defective, and plaintiff may attempt to establish its relevancy by inquiry into the proper construction of the ambiguous phrase "improve performance".

Appeal from Wayne, Thomas Roumell, J. Sub-

mitted Division 1 January 5, 1972, at Detroit. (Docket No. 11067.) Decided September 26, 1972. Leave to appeal denied, 388 Mich 812.

Complaint by Walter Snider, Valencia Snider, and Michigan Mutual Liability Company, assignee of Walter Snider, against Bob Thibodeau Ford, Inc., and Ford Motor Company, for breach of warranty and negligence in the manufacture and sale of a truck. Directed verdict for defendant Ford Motor Company and verdict and judgment for defendant Thibodeau. Plaintiffs appeal. Reversed in part, affirmed in part, and remanded for a new trial as to Ford Motor Company.

*Bellinson, Doctoroff & Wartell (Ronald D. Feldman,* of counsel), for plaintiffs.

*Alexander, Buchanan & Seavitt,* for defendant Ford Motor Company.

*Plunkett, Cooney, Rutt & Peacock* (by *D. J. Watters),* for defendant Thibodeau.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

LEVIN, P. J. Plaintiff Walter Snider purchased from defendant Bob Thibodeau Ford, Inc. a new truck manufactured by defendant Ford Motor Company. The truck was purchased for use in Snider's business of delivering advertising circulars to boys, who in turn made local deliveries.

Snider testified that on the day of the accident, while proceeding north on Mound Road in Detroit, he applied the brakes, discovered that the brake pedal slipped to the floor without meeting any resistance, and, in order to avoid striking other

vehicles, he swerved onto the median and struck a tree.

Snider brought this action against Ford and Thibodeau seeking to recover damages. The complaint alleged counts in warranty and negligence but falls into the general area of products liability.[1]

The trial judge directed a verdict in favor of defendant Ford at the close of Snider's case, and the jury returned a verdict of no cause of action in favor of defendant Thibodeau.

## I

Snider first claims that the judge erred in directing a verdict in favor of Ford. The question in such cases is whether the evidence, viewed in the light most favorable to the plaintiff, establishes a *prima facie* case against the defendant.[2]

We begin our consideration with a preconception which is best stated at the outset. When a jury is impaneled, the jury, not the court, is vested with the authority of the trier of fact.[3] The device of directed verdicts was not intended to disturb this allocation of function, that is certain. A verdict is properly directed only when there is no question for a trier of fact—where all reasonable men must agree that there has been an essential failure of proof.[4]

---

[1] *See Cova v Harley Davidson Motor Co,* 26 Mich App 602 (1970).

[2] *See Weisenberg v Village of Beulah,* 352 Mich 172, 184 (1958); *Bronson v J L Hudson Co,* 376 Mich 98, 101 (1965); *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 229 (1968).

[3] US Const, Am VI, Am VII; Const 1963, art 1, §§ 14, 20; Const 1908, art 2, §§ 13, 19; Const 1850, art 6, §§ 27, 28; Const 1835, art 1, §§ 9, 10.

[4] *See Normand v Thomas Theatre Corp,* 349 Mich 50, 58 (1957); *Beach v St Joseph,* 192 Mich 296, 301 (1916); Blume, *Origin & Development of the Directed Verdict,* 48 Mich L Rev 555 (1950).

In products liability cases, the plaintiff is obliged to produce evidence reasonably leading to the conclusion that the defendant has supplied a product which is defective and that this defect has caused injury to the plaintiff. *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 96, 98 (1965). In this case Ford contends that Snider's proofs are deficient because he failed to offer any evidence of a particular malfunction in the braking system.

The relatively new and rapidly developing genre of products liability law rests on a policy giving the consumer a legally-enforceable right, as against the manufacturer, to proceed on the assumption that the product will serve in normal use without causing injury. Generally speaking, a product is defective if it does not fulfill this assumption.

This does not mean that the concept of fault has been abolished so that manufacturers become insurers; the term "defect" marks off the zone of the manufacture's responsibility. *Piercefield v Remington Arms Co, Inc, supra,* p 98.

A demonstrable malfunction is generally clear evidence of a defect, but the legal conclusion that a product is defective may follow from circumstantial evidence without the need physically to exhibit the loose bolt or structural weakness.

In *Bronson v J L Hudson Co,* 376 Mich 98, 102 (1965), the Michigan Supreme Court reversed a directed verdict for the defendant where the plaintiff's only proof that a lady's slip purchased from defendant caused her severe dermatitis was negative, aimed at eliminating other factors. The Court did not require a showing of a particular defect in the slip. Mr. Justice OTIS M. SMITH, writing for four members of the Court, said that, "a legitimate inference from plaintiffs' proofs was that an irri-

tant was present in the cloth, which irritant caused" the injury. Similarly, in *Schedlbauer v Chris-Craft Corp,* 381 Mich 217 (1968), the plaintiff was unable to show the defect directly by introducing the fuel pump diaphragm into evidence and was allowed to prove by expert testimony and inference that an explosion aboard his boat was caused by the diaphragm's failure.

An example of a similar approach in other jurisdictions is *Henningsen v Bloomfield Motors, Inc,* 32 NJ 358, 409–411; 161 A2d 69, 98–99; 75 ALR2d 1 (1960), a leading case in the area of products liability often cited by Michigan courts with approval. In that case the plaintiff's evidence of a defect was a sharp noise and loss of steering control. The collision damage made it impossible to show a particular malfunction of the steering system. Nevertheless, the New Jersey Supreme Court held that the defect could be inferred from the behavior of the steering system.[5]

*Vandermark v Ford Motor Co,* 61 Cal 2d 256; 37 Cal Rptr 896; 391 P2d 168 (1964), also illustrates the difference between proving a particular malfunction and proving a defect. In this brake-failure case, the plaintiff offered several theories for the failure but was unable to prove the nature of the malfunction which had occurred. The California Supreme Court, nevertheless, ruled that it was for the jury to decide whether there was a defect.

---

[5] A number of courts have reached the same result through the label *res ipsa loquitur.* Michigan has a long history of denying the term but applying the precepts of the doctrine. *See Weisenberg v Village of Beulah,* 352 Mich 172, 182 (1958); *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117 (1946).

Although the doctrine and limitations of *res ipsa loquitur (cf. Gadde v Michigan Consolidated Gas Co, supra,* p 124) may not be properly applicable to all products liability cases, since negligence is not necessarily an issue, the underlying principle, allowing reasonable inferences to be drawn from circumstantial evidence, does apply. *See* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn L Rev 791, 842 (1966).

Our Court has declared that a product is defectively designed if the product is not "reasonably safe for the purposes for which it is intended".[6] We see no reason why a design defect, like a defect in manufacture, may not be proved by circumstantial evidence.

Snider purchased his truck in January, 1966. In March of that year he and his truck began a long and rather frustrating course of dealing with defendant Thibodeau. On eight separate occasions Snider reported a variety of brake difficulties to Thibodeau and repairs were made. On the last visit, two days before the accident, Thibodeau's service manager was sufficiently concerned to seek advice from a Ford service representative. The Ford representative advised that heavy duty brakes were required for the use to which the truck was being put. Snider declined to have this new braking system installed.

Snider testified that the brakes failed completely on July 2, 1966. His testimony was corroborated by William Aull, who examined the truck shortly after the accident in his capacity as claims adjuster for Snider's automobile insurer and found that the brake pedal went to the floorboard without resistance. Their testimony was challenged by John Terrell, who also examined the truck and testified that his examination of the brake pedal indicated that it worked properly. Of course, it is a jury question whether a failure in fact occurred.

The evidence, including especially the testimony concerning the recommendation of Ford's service representative, tended to establish that the braking system supplied by Ford for plaintiff's truck

---

[6] *Farr v Wheeler Manufacturing Corp,* 24 Mich App 379, 386 (1970), and Noel, *Manufacturer's Negligence of Design or Directions for Use of a Product,* 71 Yale L Rev 816, 827–829 (1962).

was insufficient for the use to which the truck was being put.

On the question whether that use was a normal use, the defendants introduced evidence from which a jury could properly conclude that Snider had subjected the truck to excessive use. A manufacturer's liability does not extend to injuries caused by abuse of the product.[7] A manufacturer may at the time of sale expressly limit, within reason, a vehicle's normal use by establishing load and use limitations.[8]

In this case, however, it is not claimed that Snider violated such an express limitation. Therefore, the question of whether his use of the truck was excessive is to be judged by the traditional reasonableness test. The question of whether his use of the truck was a normal use, a use for which the truck was intended, could not properly be decided as a question of law, and was for the jury to decide.

---

[7] "In the absence of special reason to expect otherwise, the maker is entitled to assume that his product will be put to a normal use, for which the product is intended or appropriate; and he is not subject to liability when it is safe for all such uses, and harm results only because it is mishandled in a way which he has no reason to expect, or is used in some unusual and unforeseeable manner."

2 Restatement Torts, 2d, § 395, comment j, p 330. *See, also,* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 30 Minn L Rev 791, 824, fn 173 (1966); Noel, *Products Liability: Bystanders, Contributory Fault and Unusual Uses,* 50 FRD 321, 332–338 (1970); Levine, *Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty,* 52 Minn L Rev 627, 643 (1968).

[8] *See* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn L Rev 791, 824, n 174 (1966). In this case Snider was made aware of the inadequacy of the braking system. In 2 Restatement of Torts, 2d, § 402A, comment n, p 356, it is stated, "Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense". On the record in this case it was a jury question whether Snider acted reasonably in not replacing the braking system as recommended by Ford's representative.

Ford argues that only by conjecture could a jury find that there was a defect in the braking system or that any such defect was attributable to it rather than defendant Thibodeau or Snider.[9]

In many cases it will be necessary to show a particular defect. In *Meli v General Motors Corp*, 37 Mich App 514 (1972), the plaintiff could show only that the accelerator spring in his automobile had become disconnected, but could not show any manufacturing defect which could have caused the spring to become disconnected. Since there were any number of possible explanations for a disconnected spring, we held that a directed verdict in defendant's favor was proper.

In *Meli,* however, a case of "brake mechanism" failure was expressly distinguished. More importantly, there is in this case circumstantial evidence in the truck's service history of an inherent defect in the braking system which was not present in *Meli.* The rule on conjectural cause does not preclude the establishment of a products liability claim with circumstantial evidence.[10] The numerous and continuing problems and the description by Ford's representative of the brake system as inadequate bespeak problems stemming from manufacture or design or—as Ford contends—misuse, rather than maintenance, factors not present in a sudden isolated failure such as occurred in *Meli.* Snider's theory here does have "selective application" to a defective braking system as the cause of the accident.[11]

---

[9] *Cf. Kaminski v Grand T W R Co,* 347 Mich 417 (1956); *Walsh v Grand T W R Co,* 363 Mich 522 (1961); *Kasten v U S Truck Co, Inc,* 23 Mich App 466 (1970).

[10] *Cf. Schedlbauer v Chris-Craft Corp, supra.*

[11] In *Parsonson v Construction Equipment Co,* 386 Mich 61, 78 (1971), the plaintiffs theorized that an explosion was caused by a "heater-blower", while defendants' theory was that the explosion was

Were a jury to decide that the wrong to Snider had been established, the question to which of two possible tortfeasors—Ford or Thibodeau—liability should be assigned does not pose an issue of conjectural cause.

True, the burden of proving which of two possible wrongdoers is responsible is generally assigned to the plaintiff. The courts have, however, shown a willingness to consider special circumstances when allocating the burden of proof. This accords with the general view that the placing of that burden is "merely a question of policy and fairness based on experience in the different situations".[12]

In *Loch v Confair,* 372 Pa 212; 93 A2d 451 (1953), and *Nichols v Nold,* 174 Kan 613; 258 P2d 317 (1953), both exploding bottle cases, the plaintiffs could not possibly prove whether the manufacturer or distributor or retailer was responsible for whatever defect there had been in the bottle. In *Dement v Olin-Mathieson Chemical Corp,* 282 F2d 76 (CA 5, 1960), the plaintiff was injured by a premature explosion of dynamite which might have been caused by a defect in either the dynamite or blasting cap; both of these having been destroyed, the plaintiff could not prove which manufacturer should be held liable. In all these cases, the burden was transferred to the defendants to show which defendant should be held liable to the plaintiff.

---

caused by a cigarette or a spark from one of several possible sources. The Michigan Supreme Court was convinced on its review of the evidence in that case that the plaintiffs' "theory remains without *selective application* of the heater-blower as a source of ignition over the more probable and much nearer source". (Emphasis supplied.)

[12] 9 Wigmore on Evidence, § 2486, p 275. *Cf. Hand v Park Community Hospital,* 14 Mich App 371, 374 (1968).

Even in a criminal case, the burden of going forward with the evidence may be placed on the defendant. *See People v Morrin,* 31 Mich App 301, 316 (1971).

In this case, because of the technical problems involved in a brake system, the superior knowledge and expertise of a manufacturer like Ford, and the close relationship between the manufacturer and retailer Thibodeau, we conclude that the burden of negating individual responsibility for the brake failure should be placed on the defendants.

The judge erred in directing a verdict in favor of Ford.

## II

Snider also contends that the judge erred in refusing to admit into evidence a "technical services bulletin" issued by Ford. This bulletin concerns the installation of new master brake cylinders on trucks of the class and year sold to Snider. The bulletin "recommend[s] that the new parts * * * be installed for the appropriate vehicle when problems are encountered". It states that these changes are designed "to reduce external hydraulic fluid leakage *and improve performance".* (Emphasis supplied.) The bulletin indicates that these changes were made on vehicles in current production on March 10, 1966, but the publication date of the bulletin appears to be July 1, 1966.

We agree with the judge that this exhibit was not shown to be admissible against defendant Thibodeau. Considering that the accident occurred on July 2, 1966, and that the last service of the vehicle was June 30, 1966, it seems clear that a bulletin issued on July 1, 1966, would not show negligent maintenance by Thibodeau.

As to defendant Ford, a more difficult issue is presented. Snider claims that this bulletin is admissible to show Ford's knowledge that the brake

system was defective. However, the defect specifically noted in the bulletin—external hydraulic fluid—was not advanced by Snider as a possible cause for the brake failure which he experienced. This part of the brake system was in the possession of Snider's expert who, no doubt, would have discovered a defect as obvious as a loss of brake fluid.

The bulletin, as quoted and italicized above, also indicated that the changes would "improve performance". This is ambiguous language which might or might not be relevant to Snider's case. If this language refers to a problem (other than master cylinder fluid leakage) relevant to Snider's claims against Ford in this case, it would be admissible. On retrial Snider may inquire into the proper construction of this phrase in an effort to establish relevancy.

### III

The final assignment of error questions one aspect of the judge's instructions to the jury. The instruction complained of is set forth in the margin.[13] Snider objected to this instruction, but re-

---

[13] "Ladies and gentlemen, there is a statute or was a statute in effect at the time of this incident and a statute of the State of Michigan, which provided as follows:

" 'Every motor vehicle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.' "

"Therefore, ladies and gentlemen, you are charged that if you find that was a failure of the brakes of the plaintiff's vehicle, but that the plaintiff had an opportunity to stop the vehicle by means of the hand brake and failed to use the hand brake when a person in the exercise of ordinary care would have used the hand brake, and such failure was a proximate cause of the accident complained of, your verdict shall be of no cause of action in favor of the defendant."

corded no reason for the objection,[14] and did not request an instruction on sudden emergency which he now asserts should have been given.[15] Snider not having requested a more elaborate instruction, there was no error.

The directed verdict in favor of Ford Motor Company is reversed. The judgment of no cause of action in favor of Bob Thibodeau Ford, Inc., is affirmed.

Reversed in part and affirmed in part. Remanded for a new trial of the Sniders' claim against Ford Motor Company.

Plaintiffs may tax their costs against defendant Ford Motor Company; defendant Bob Thibodeau Ford, Inc. may tax its costs against the plaintiffs.

All concurred.

---

[14] The complete colloquy between the court and Snider's lawyer follows:

*"Mr. Bellinson:* I would like to raise an objection to the one on the hand brake.

*"The Court:* You may record your objection.

*"Mr. Bellinson:* Yes.

*"The Court:* Very well. Yes?"

[15] It is Snider's contention that the instruction as given was incomplete in that the jury was not also told, "Some allowance must be made for time required for the requisite mental and physical operation in the application of automobile brakes, especially when, without negligence on his part, the driver is suddenly confronted with the necessity of action". *Morton v Peterman,* 291 Mich 442, 445 (1939).