## PIPER v TENSOR CORPORATION

1. PRODUCTS LIABILITY—DEFECTIVE DESIGN—REASONABLE SAFETY—IN-
   TENDED PURPOSES.

   A product is defectively designed if it is not reasonably safe for
   the purpose intended.

2. PRODUCTS LIABILITY—DEFECTIVE DESIGN—EVIDENCE—CIRCUMSTAN-
   TIAL EVIDENCE.

   The evidence necessary to prove the defective design of a product
   in a products liability case may be circumstantial; the defect
   may be inferred by the behavior of the product.

3. PRODUCTS LIABILITY—DEFECTS—EVIDENCE—CIRCUMSTANTIAL EVI-
   DENCE.

   A product may be found defective in a products liability action
   from circumstantial evidence without a specific showing of
   demonstrable defect.

4. PRODUCTS LIABILITY—DIRECTED VERDICT—INFERENCES—CIRCUM-
   STANTIAL BASIS—JURY DETERMINATION.

   It was not error for a trial court, in a products liability action, to
   deny a defendant's motion for a directed verdict upon the
   completion of the plaintiffs' presentation of their case where in
   the plaintiffs' presentation there was a sufficient circumstantial
   basis upon which inferences of defective design of the product
   and of the causation of the resultant fire and damages could
   present questions for the jury to decide; it was not necessary
   that plaintiffs offer expert testimony specifying an exact theory
   as to the cause of the fire.

5. APPEAL AND ERROR—TRIAL—INSTRUCTIONS TO JURY.

   A trial court's instruction to a jury must be viewed in its entirety
   in determining whether or not it is so clearly erroneous as to
   require reversal.

## Appeal from Ingham, Thomas L. Brown, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 63 Am Jur 2d, Products Liability §§ 9 *et seq.,* 86.

[5] 5 Am Jur 2d, Appeal and Error § 891.

mitted June 15, 1976, at Lansing. (Docket No. 24603.) Decided October 19, 1976.

Complaint by Harry M. Piper and Eva Mae Piper, and Allstate Insurance Company, as subrogee of Harry M. Piper and Eva Mae Piper, against Tensor Corporation for damages for personal injury to Harry M. Piper and property damage from a fire caused by a lamp manufactured and repaired by the defendant. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Newman & Mackay,* for plaintiffs.

*Gemuend, Barbier & Goulet, P. C.,* for defendant.

Before: BRONSON, P. J., and BEASLEY and D. ANDERSON, JR.,* JJ.

BEASLEY, J. Plaintiffs made claim against defendant for personal injury and property damage arising from a fire caused by an allegedly defective lamp. The facts are that on June 17, 1969, the individual plaintiffs returned a high intensity lamp manufactured by defendant for repair. After repair and return to plaintiffs, subsequently, on January 20, 1970, the lamp caught fire causing severe burns and injuries to plaintiff, Harry M. Piper, destruction of furniture and furnishings and other damage. After trial, plaintiffs had judgment on a jury verdict in the total amount of $54,210. Defendant appeals claiming, among other things, that the trial court erred in denying its motion for directed verdict upon completion of plaintiffs' case and in instructing the jury regarding theories that were allegedly not supported by the evidence.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

In their complaint, plaintiffs claim defendant was negligent in the manufacture, design, repair and inspection of the lamp, was in violation of its implied warranties of fitness for purposes intended and, in addition, was responsible under a strict liability theory.

The proofs in this case afforded a classic clash of experts. Plaintiffs' local expert, short on education but long on experience, 27 years in the fire protection field with 13 as a fire marshal or assistant fire marshal, was on the scene within hours of the fire. Defendant's outside expert, thoroughly qualified in the halls of academia, came into the case over three years after the fire and never did test the charred remains of the lamp in the way he wanted. Apparently the jury gave greater weight to the former, or so the verdict would seem to indicate.

Defendant claims that it was error not to grant his motion for directed verdict on the ground that there was not sufficient evidence to support plaintiffs' claims and, further, that it was error to instruct regarding negligent design in the absence of evidence of negligent design. This is not the first time this type of issue has been raised. In *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708; 202 NW2d 727 (1972), which was a brake failure case, the Court said a product is defectively designed if not reasonably safe for the purpose intended. The evidence necessary to prove defective design may be circumstantial, that is, the defect may be inferred by the behavior of the product.

A 1973 case articulating a generally similar rule was *Garmo v General Motors Corp,* 45 Mich App 703; 207 NW2d 146 (1973). In *Garmo,* plaintiff was a passenger in a Pontiac that was 4-1/2 months old and with 8,000 miles. Testimony indicated

continuing brake problems and, at the time of the accident, the owner-driver said that the brake pedal went to the floor in attempting to stop for a red light, and that the car failed to stop. However, there was not any expert testimony explaining the reason or basis for the brake failure. On appeal the Court said that a product may be found defective from circumstantial evidence without a specific showing of a demonstrable defect. Thus, that Court held there was sufficient evidence to support a finding of breach of implied warranties.

These two cited brake failure cases rest upon *Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968). In *Schedlbauer,* the Court quoted other authority as follows:

" 'Negligence, like any other fact, may be inferred from circumstances. * * * And, though the proof of plaintiff depended upon inference to establish the main fact, the question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury.' " *Schedlbauer v Chris-Craft Corp, supra,* at 230.

Where, as here, the product is a lamp and where the lamp is recently repaired and where a fire occurs under circumstances in which it may be inferred the lamp was defective, there were questions for the jury. First, was the lamp defective in design and, if so, was it the proximate cause of the fire and damages? Second, under these circumstances, was repair of the lamp a breach of defendant's implied warranty of fitness for the purpose intended and, if so, was it the proximate cause of the fire and damages? In this case, there was sufficient basis upon which these inferences could arise. It was not error for the court to deny defendant's motion for a directed verdict upon com-

pletion of plaintiffs' presentation of their case and
to instruct the jury regarding these issues.

Defendant further claims that the instruction
given by the court to the jury was erroneous
because it encompassed a theory not supported by
the evidence. The record indicates that the court
instructed the jury as to parties' theories as fol-
lows:

"Now, ladies and gentlemen of the jury, the Plaintiffs
have filed a complaint against the Defendant in which
they claim that on June 1, 1969, the Plaintiffs, Harry
M. and Eva Mae Piper, returned a Tensor Model 650,
120V-60W3M Lamp, to the Defendant for repairs. They
claim further that the lamp was returned to the Plain-
tiffs by the Defendant who placed it on a cabinet in the
Plaintiffs' home for use in connection with their normal
household activities.

"The Plaintiffs claim further that on January 20, 1970,
the Plaintiff, Harry M. Piper, while upstairs in his
home, smelled the odor of smoke, that he opened the
bathroom door, descended the stairway which termi-
nated in the living room, and he saw smoke in the area.
He claims that when he went to the front door, and
when he opened it, the entire internal portion of the
house burst into flames, causing him severe burns to his
face, head, hands, back and approximately 30 percent of
his body, which resulted in permanent scarring and
disfigurement of his person.

"It is further the claim of the Plaintiffs that the
Defendant was negligent in the manufacture and repair
of the Tensor Lamp, because the corporation failed to,
first of all, properly design the lamp; they claim that
the corporation failed to properly inspect it so that it
would be safe for household use; they claim that the
corporation failed to warn the Plaintiffs of its inherent
dangerous construction; they claim that the corporation
failed to construct the lamp with noninflammable mate-
rial which would have prevented the fire.

"They further claim that the corporation constructed
the lamp improperly because a transformer was located

in the base of the lamp without proper protective devices which would have prevented the transformer from over-heating and burning the cabinet upon which it was resting which caused the fire, and thereby it restored and repaired an inherently dangerous instrumentality which caused property damage and personal injury to the Plaintiffs. They claim that the Defendant corporation is strictly liable to the Plaintiffs.

"It is further their claim, ladies and gentlemen, that the Defendant failed to use construction material which would have resisted excessive heat created in the base of the lamp which would have prevented a fire. They also claim that the lamp was designed for two intensities; a high and low intensity, and the low intensity failed to operate properly, causing the transformer to be energized which caused an excessive amount of heat to develop in the base of the lamp which they claim over-heated and a fire which destroyed their home resulted, and caused severe personal injuries to the Plaintiff, Harry M. Piper.

"It is further the claim, ladies and gentlemen, of Allstate Insurance Company that it is entitled to recover the sum of $12,210.00 from the Defendant, that being the amount of money it paid pursuant to a policy of insurance issued by it to Harry M. and Eva Mae Piper, the Plaintiffs herein. And, in addition, the Plaintiffs are entitled to recover damages for the loss of the contents of their home over and above their insurance coverage, in addition to medical and hospital bills, pain and suffering, anxiety and embarrassment because of the disfigurement of the body and face of Harry M. Piper.

"It is further Plaintiffs' claim that they are entitled to further compensation for the loss of society and companionship which the Court will later define. In addition, they claim that they may be required to seek further medical assistance and possible hospitalization for the severe burns to the face and body of Mr. Piper, and also the possibility of reconstructive surgery.

"It is, ladies and gentlemen of the jury, further the Plaintiffs' claim that the Defendant was guilty of negligence as outlined aforesaid, and also, in relation to the repair of the Tensor Lamp, that it breached an implied

warranty that the Tensor Lamp was safe for use in the Plaintiffs' home and was reasonably fit for the use for which it was constructed, and, they claim it was unsound and defective, that there was a breach of an implied or expressed warranty of fitness and suitability for use.

"Members of the jury, it is the claim of the Plaintiffs that the Defendant was guilty of acts of negligence as follows: They claim that the Defendant failed to properly design the lamp for normal household use. They claim that the Defendant failed to properly inspect it after it was manufactured and repaired, so that it would have been safe for household use. They claim that the company failed to notify the Plaintiffs of its inherently dangerous construction. They claim that the company failed to construct the lamp with noninflammable material which would have prevented the fire. They further claim that the company failed to construct the lamp with the transformer located in the base without proper protective devices which caused the transformer to over-heat and burn the cabinet upon which it rested, causing the fire. They claim that by constructing the Tensor Lamp with two intensity mechanisms, a high and a low, when the low mechanism was improperly repaired and failed to work properly, causing the transformer to be energized without allowing the lamp to light properly which caused an excessive amount of heat to develop in the base of the lamp, causing it to over-heat and igniting the cabinet, which caused the fire in the Plaintiffs' home.

"Now, ladies and gentlemen of the jury, it is the theory of the Defendants in this case that on January 20, 1970, a fire ensued in the home of the Plaintiffs, Marry [sic] M. Piper and Eva Mae Piper. That Plaintiffs are seeking damages against the Defendant Tensor Lamp Corporation by virtue of the fact that the lamp was at the time the fire occurred, in the living room area, and based upon the fact that the lamp had, on one prior occasion, apparently not worked properly and had been sent back to the Tensor Lamp Corporation, repaired, and returned to the Plaintiffs. It is the theory of

the Defendants in this case that the fact that the lamp was in the room at the time the fire occurred and that the fact that the lamp had at one time been returned for repair, does not establish any culpability or responsibility on the part of the Tensor Lamp Corporation.

"Defendant herein contends that the Plaintiffs' entire case is based upon an allegation that the lamp had, for approximately six months, failed to operate in its low intensity phase, which caused the transformer to be energized without allowing the lamp to light properly, causing excessive amount of heat which overheated a plastic cabinet below and caused the fire. It is the Defendant's theory that Plaintiff did not, and in fact scientifically and technically cannot, establish that as the cause of this fire, since it technically and scientifically could not have happened in that manner.

"It is the Defendant's theory that not only do the physical characteristics of the lamp in its present burned condition unequivocally establish that the lamp was burned from the outside in (rather than from the inside out), but that Defendant has established that there are other alternative causes that could have started the fire in question, all of which are substantially more plausible than the theory which has been advanced by the Plaintiff.

"It is the Defendant's further theory that the facts which have been developed during the course of this trial, both by way of lay testimony and by way of technical expert testimony, in conjunction with the physical conditions which were existing at the time the fire must have started, clearly established that the Tensor Lamp could not have been the instrument which caused the fire in question."

It is evident that in attempting to comply with the court rule the trial judge read to the jury each party's theory as submitted to him by that party's attorney. GCR 1963, 516.7. As is typical, the theories are part argument, part repetition and part theory.[1] However, out of these conflicting theories arose the issues that the jury decided.

---

[1] In actual practice it is not unusual under GCR 516.7 for counsel to mix a little argument with his statement of theory, which practice is not condoned.

It was not necessary that plaintiff offer expert testimony specifying an exact theory as to the cause of the fire. As is indicated above, the showing that the lamp, manufactured and repaired by defendant, caught fire soon after being repaired by defendant, was sufficient circumstantial evidence to raise an inference that defendant had breached its implied warranty of fitness for the purpose intended and had been negligent in designing the lamp.

Defendant's claim that there was no evidence to justify instructing on plaintiffs' theories is without merit. The court's instruction to the jury must be viewed in its entirety and so viewed is not so clearly erroneous as to require reversal.

Defendant's other claims of error are not supported in the record.

Affirmed.