HOLLOWAY v GENERAL MOTORS CORPORATION

Docket No. 57139. Argued May 4, 1976 (Calendar No. 7).—Decided
February 14, 1977. Rehearing granted 400 Mich 984.

Sharon H. Holloway, as next friend of Brenda Holloway and as
administratrix of the estate of Ernest T. Holloway, deceased,
brought an action against General Motors Corporation (Chevro-
let Division), Eaton County, and the Eaton County Road Com-
mission for damages suffered when an automobile driven by
Ernest T. Holloway in which Brenda Holloway was a passenger
left a gravel road and struck a telephone pole. Plaintiffs alleged
that General Motors, the manufacturer of the automobile,
breached express and implied warranties, failed to design the
steering mechanism properly and was negligent in the manu-
facture and inspection of the automobile. The Eaton Circuit
Court, Richard Robinson, J., directed a verdict for defendant
General Motors on the ground that there was no evidence of a
specific defect in the automobile. The Court of Appeals, Allen,
P. J., and O'Hara, J. (N. J. Kaufman, J., dissenting), affirmed
(Docket No. 19334). Plaintiffs appeal. *Held:*

The decision of the Court of Appeals is affirmed by an equally
divided Court.

Justice Fitzgerald, with Justices Coleman and Ryan concur-
ring, voted to affirm:

1. A plaintiff in a products liability action must prove a
defect attributable to the manufacturer and the causal connec-
tion between that defect and the injury or damage of which he
complains in order to prevail in either an action for breach of
warranty or for negligence. Evidence in a products liability
action of the existence of a defective condition caused by the
manufacturer may be direct or circumstantial, and existence of
a defective condition may be inferred from circumstantial

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 849.
[2] 63 Am Jur 2d, Products Liability § 86.
[3, 5–8, 12, 13] 63 Am Jur 2d, Products Liability § 22.
[4] 63 Am Jur 2d, Products Liability §§ 20, 80.
[9, 11] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 646–666.
[10] 63 Am Jur 2d, Products Liability § 39.

evidence alone. However, the burden is on the plaintiff to prove, not the defendant to disprove, the existence of a defect and its causal connection to the injury.

2. No proofs were introduced which would show or permit the reasonable inference that the ball-joint assembly, the failure of which allegedly caused the car to run out of the driver's control, was defectively designed, constructed with defective material, or improperly assembled. Testimony by an expert witness that he "would not expect" this type of failure from driving a car at a certain speed over a rough road assumes that which is sought to be proven, and does not address the question whether a defect was present in the assembly when it left the manufacturer's control.

3. The absence of testimony that the vehicle was improperly maintained or that failures of this type are expected to occur in vehicles after they have been operated for four years does not reasonably permit the inference that the decedent's loss of control could be attributed to a defective ball joint assembly, and does not meet the plaintiff's burden of proof of the existence of a defect. There was no evidence of prior incidents involving the malfunction of the steering or suspension system, and the plaintiff did not prove the absence of any other factors or circumstances which could have caused the failure. A directed verdict for the defendant was proper for failure to prove that a defect existed when the vehicle left the defendant's control.

Justice Levin, with Chief Justice Kavanagh and Justice Williams concurring, voted to reverse:

1. To establish a prima facie case of product liability the defect need not be apparent at the time the product left the factory, but may be a latent or hidden defect which later arises and causes damage. The manufacturer's responsibility for the defect may be inferred from evidence of malfunction and other accompanying circumstances. Such evidence may be sufficient to overcome evidence tending to support defendant's theory that the damage was the result rather than the cause of the collision. The strength of the inference that a defect existed when a vehicle left the factory is related to the age and mileage of a vehicle, and is a question for the jury.

2. The plaintiff introduced evidence, including expert testimony, which tended to show that the wheel assembly broke before the car left the road, and thus that the break caused the accident, rather than being caused by the accident. Wheel assemblies are not expected to wear out and be replaced. There was no suggestion that this assembly had been tampered with

or that it is a part of the car that is expected to be or reasonably should be inspected on a periodic basis. Where the defect alleged is latent in the very structure of the vehicle and may not in ordinary circumstances be discovered during routine maintenance, evidence of proper maintenance is not required to support the inference that the defect occurred before the product left the factory.

3. Plaintiffs introduced evidence from which the jury could reasonably infer that the accident was caused by a manufacturing defect, even though that was not the only inference that might have been drawn. The trial court erred in directing a verdict for the defendant because the court could not say that reasonable men on the jury could not find it more likely than not that the fact is true.

Justice Moody did not participate in the decision.

Affirmed by an equally divided Court.

60 Mich App 208; 230 NW2d 380 (1975) affirmed by an equally divided Court.

### DECISION OF THE COURT

1. PRODUCTS LIABILITY—APPEAL AND ERROR—EQUALLY DIVIDED COURT.

   A decision of the Court of Appeals affirming a directed verdict for an automobile manufacturer in a product liability action is affirmed by an equally divided Supreme Court.

### OPINION FOR AFFIRMANCE

COLEMAN, FITZGERALD, and RYAN, JJ.

2. PRODUCTS LIABILITY—BREACH OF WARRANTY—NEGLIGENCE—BURDEN OF PROOF.

   *A plaintiff in a products liability action must prove a defect attributable to the manufacturer and the causal connection between that defect and the injury or damage of which he complains in an action for either a breach of warranty or negligence in order to prevail.*

3. PRODUCTS LIABILITY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

   *Evidence in a products liability action of the existence of a defective condition caused by the manufacturer may be direct or circumstantial, and existence of a defective condition may be inferred from circumstantial evidence alone.*

4. PRODUCTS LIABILITY—EVIDENCE—EXPERT WITNESSES—AUTOMOBILES.

   *Testimony by an expert witness in a products liability action that*

he "would not expect" the type of failure alleged to have occurred in a ball-joint assembly of an automobile to result from driving a four-year-old automobile at a certain speed over a rough road assumes that which is sought to be proven, and does not address the question whether a defect was present in the automobile when it left the manufacturer's control.

5. PRODUCTS LIABILITY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—AUTOMOBILES.

The absence in a products liability action alleging that a failure of the steering mechanism of an automobile caused the driver to lose control of the vehicle of evidence that a vehicle was improperly maintained and that failure of the ball joint assembly of that type alleged were expected to occur in vehicles after they have been operated for four years does not reasonably permit the inference that the loss of control could be attributed to a defect in the vehicle when it left the manufacturer's control where there was no evidence of prior incidents involving the malfunction of the vehicle's steering or suspension system, and the plaintiff did not prove the absence of any other circumstances which could have caused the failure.

OPINION FOR REVERSAL

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

6. PRODUCTS LIABILITY—CIRCUMSTANTIAL EVIDENCE—PRIMA FACIE CASE—DEFECT.

Circumstantial as well as direct evidence may be considered in determining whether there is a prima facie case of product liability; a product can be proved defective by drawing reasonable inferences from circumstantial evidence without specifically proving the existence of a demonstrable defect.

7. PRODUCTS LIABILITY—CIRCUMSTANTIAL EVIDENCE—AUTOMOBILES—DEFECT.

Evidence in a product liability action of a sudden, uncontrollable failure in the steering or braking mechanism of an automobile, along with physical evidence that the damage is not attributable to the impact, may permit an inference that there was a defect and that it existed before the vehicle left the pavement.

8. PRODUCTS LIABILITY—CIRCUMSTANTIAL EVIDENCE—DEFECT—PRIMA FACIE CASE.

A defect in a product need not be apparent at the time the product left the factory, but may be merely a latent defect or hidden defect which later arises and causes damage, to estab-

lish a prima facie *case of product liability; although the occurrence of an accident does not prove that the cause was a manufacturing defect, the manufacturer's responsibility for the defect may be inferred from evidence of malfunction and other accompanying circumstances.*

9. PRODUCTS LIABILITY—AUTOMOBILES—AGE—MILEAGE—INFERENCES.

*The age and mileage of a vehicle go to the strength of the inference that a defect existed at the time the vehicle left the factory, which is a question for the jury in a product liability action.*

10. PRODUCTS LIABILITY—DEFECT—MAINTENANCE OF PRODUCT.

*It may be necessary in some product liability cases for a plaintiff to introduce evidence of proper maintenance to support an inference that a defect occurred before the product left the factory; however, where the alleged defect is latent in the very structure of the vehicle and may not in ordinary circumstances be discovered during routine maintenance, evidence of proper maintenance is not required.*

11. PRODUCTS LIABILITY—AUTOMOBILES—DEFECT.

*Automobiles are manufactured and sold for use in excess of 50,000 miles; not all parts of an automobile can be expected to function indefinitely and flawlessly without maintenance for the life of the vehicle, but the consumer may justifiably rely on the basic integrity of the product, and the manufacturer who alone is in a position to guard against the risk is subject to liability for a latent structural defect.*

12. PRODUCTS LIABILITY—DEFECT—CIRCUMSTANTIAL EVIDENCE.

*The strength of an inference in a product liability case that an accident was caused by a manufacturing defect depends on the plausibility of competing explanations for the accident, but the plaintiff is only required to show a logical sequence of cause and effect notwithstanding the existence of other plausible theories with or without support in the evidence; plaintiffs are not required to offer evidence which positively excludes every other possible cause of the accident.*

13. PRODUCTS LIABILITY—DEFECT—CIRCUMSTANTIAL EVIDENCE.

*Evidence, including expert testimony, in a trial for product liability which tended to show that a wheel assembly of an automobile broke before the car left the road, and an absence of suggestion that the assembly had been tampered with or that it is a part of the car that is expected to be or reasonably should be inspected on a periodic basis were facts from which*

the jury could reasonably infer that the accident was caused by a manufacturing defect, even though that was not the only inference that might have been drawn.

*Abood, Abood & Abood, P. C.* (by *Richard J. Abood* and *William E. Rheaume)* for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel* and *Kenneth L. Block)* for defendant General Motors Corporation.

FITZGERALD, J. An allegedly defective automobile wheel assembly provides yet another occasion to examine Michigan products liability law. The specific question is whether the trial court correctly awarded defendant General Motors a directed verdict because no proofs were introduced which would indicate or permit the reasonable inference that the right front ball joint assembly was defectively designed, constructed with defective material, or improperly assembled. The Court of Appeals agreed with the trial court's decision, and we likewise believe that a directed verdict was properly awarded for defendants.

On May 28, 1971, Ernest T. Holloway was traveling between 50 and 55 miles an hour on Nixon Road in Eaton County, when he lost control of his 1967 Chevrolet automobile and struck a telephone pole. Holloway was killed and his minor daughter, Brenda, sustained multiple injuries. The accident was allegedly caused by a defective ball joint assembly in the right front wheel, which broke while traveling over chuckholes in the road.

Plaintiff, surviving wife Sharon, filed suit for damages against General Motors, Eaton County, and the Eaton County Road Commission. At the close of trial, a verdict of no cause of action was entered in favor of Eaton County and the commis-

sion. Defendant General Motors was awarded a directed verdict because no proofs were introduced to permit the inference of a breach of warranty due to a failure of the vehicle's suspension system when it had performed more than four years covering some 47,000 miles without evidence of a part failure.

Plaintiff appealed, and Judge O'HARA, writing for the majority below, viewed the Court of Appeals position as having to choose between two mutually exclusive rules of law as set forth in *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965), and *Bronson v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965). *Piercefield* required that a plaintiff must "prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains".[1] The rule in *Bronson,* gleaned from the passage quoted in the margin,[2] is that even in the absence of competent direct evidence, it is error to conclude as a matter of law that a prima facie case cannot be established where the evidence, viewed in the light most favorable to plaintiff, permits reasonable

[1] 375 Mich 98–99.

[2] "Upon the record made, was defendant entitled to a directed verdict? In *Weisenberg v Village of Beulah,* 352 Mich 172, 184 [89 NW2d 490 (1958)], this Court said: 'that the testimony and all legitimate inferences that may be drawn therefrom must be viewed in the light most favorable to the plaintiff in determining whether he has established a prima facie case when weighed against defendant's motion for a peremptory verdict in his favor at the close of plaintiff's proofs.'

"In the instant case, there was no competent direct proof of what specific irritant, if any, was present in the slip cloth. Upon favorable view, did the facts, along with legitimate inferences to be drawn therefrom, constitute a prima facie case sufficient in law to prevail against defendant's motion for directed verdict? More specifically, was there evidence from which it might be legitimately inferred that an irritant was present in the cloth at time of purchase, which irritant was a proximate cause of injury?" 376 Mich 98, 101–102.

minds to differ as to the legitimate inferences that might be drawn from the proofs submitted. The Court elected to follow *Piercefield* which requires "more than accident and injury to constitute a jury-submissible question of breach of implied warranty of fitness for the purpose intended".[3] Unable to find any testimony which would indicate defective design or material, and in the absence of any evidence suggesting improper assembly, the Court affirmed the trial judge's award of the directed verdict for defendant.

The dissenting opinion, however, viewed the two cases as being consistent. *Piercefield* is interpreted as detailing *what* a plaintiff is required to prove in a products liability claim, "namely, 'a defect attributable to the manufacturer and causal connection between that defect and the injury or damage' ". *Bronson* is seen as expanding upon this rule by "explaining *how* a plaintiff could prove the claim, by the introduction of direct proof and through the inferences which the jury might draw from that proof". The dissent concluded that sufficient credible evidence existed which would permit a jury to infer the existence of a defect.

While we share the concern expressed by Judge O'HARA, that the absence of clearly defined rules to be applied in product liability cases may lead to "ad hoc disposition, case by case", the alternative need not be a choice between what are viewed as two conflicting lines of authority. This Court recently stated in *Caldwell v Fox,* 394 Mich 401, 410; 231 NW2d 46 (1975), and *Kupkowski v Avis Ford, Inc,* 395 Mich 155; 235 NW2d 324 (1975), that in order to prevail in either a breach of warranty or negligence action a plaintiff must "prove a defect attributable to the manufacturer and causal con-

---

[3] 60 Mich App 208, 215.

nection between that defect and the injury or damage of which he complains". Both direct and circumstantial evidence may be introduced to prove such a defect.[4] To the extent that the Court of Appeals opinion is interpreted as limiting evidence considered in products liability cases to *direct* proofs, we wish to make clear that the existence of a defective condition may be inferred from circumstantial evidence alone. *Caldwell v Fox, supra; Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968); *Bronson v J L Hudson Co, supra.* In the instant case there was no demonstrable malfunction which would have provided unequivocal and direct evidence that a defect existed in the right front ball joint assembly when the vehicle left control of the manufacturer, defendant General Motors. Therefore, we must review the circumstantial evidence which plaintiff believes will permit a reasonable inference that such a defect existed.

Plaintiff's brief states that more than ample proof has been presented at trial to show that a failure of the right front ball joint occurred on the roadway which caused the vehicle to slide to the right, leave the road, and collide with a telephone pole. In support of this position, plaintiff offered testimony from an expert witness that this type of failure is not expected "from driving a car at 55 or 50 miles an hour over a rough road". The witness is an independent consulting physicist who stated that in his opinion the failure occurred on the roadway because of the hazardous condition of the

---

[4] This point is well stated in *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 713; 202 NW2d 727, 730 (1972), by then-Judge LEVIN:

"A demonstrable malfunction is generally clear evidence of a defect, but the legal conclusion that a product is defective may follow from circumstantial evidence without the need physically to exhibit the loose bolt or structural weakness."

road which resulted in the decedent's inability to control the vehicle. Upon further cross-examination, he testified that his expertise was not that of a qualified metallurgist and therefore he could not testify as to stress and design analysis, material strength, or any other aspect of metallurgy that would explain the breakage in the ball joint. The testimony of this witness, however, assumes that which is sought to be proved, and does not address the question of whether a defect was present in the ball joint assembly which would cause such a failure to occur.

Plaintiff further directs our attention to the *absence of* testimony indicating that (1) the vehicle was improperly maintained and (2) failures of this type are expected to occur in vehicles after they have been operated for a four-year period. Apparently we are asked to conclude from this that the ball joint failure could be attributed to defective material or design, or improper assembly. In *Kupkowski v Avis Ford, Inc, supra,* we rejected plaintiff's attempt to prove a braking system defective by the absence of evidence indicating repair or replacement of the brake parts. In that case, lack of repair or maintenance records invited the inference that none had been performed and, by further inference, this caused the alleged defect that existed in the vehicle's braking system to remain undiscovered and, therefore, unrepaired. The latter inference was ruled as impermissible conjecture not properly based upon a known positive fact. See, also, *Kaminski v Grand Trunk W R Co,* 347 Mich 417; 79 NW2d 899 (1956).

The difficulty in asserting lack of evidence as a basis for reasonably inferring the existence of a defective automobile part is readily apparent. Because no testimony was introduced that the vehi-

cle was *improperly* maintained, the jury is asked
to conclude that the decedent's loss of control
could be attributable to a defective ball joint as-
sembly. Reviewing the theories advanced in *Kup-
kowski* and the instant case, we are urged to
conclude that either an alleged defect would have
been discoverable or all other causes of the failure
were eliminated, depending upon whether testi-
mony of proper or improper maintenance is absent
from the record. In either case the inferences
drawn are improper and are in direct contradic-
tion of the established rule that the burden is
upon the plaintiff to prove, not the defendant to
disprove, the existence of a defect and its causal
connection with the injury or damage suffered.
*Piercefield v Remington Arms Co, supra; Kupkow-
ski v Avis Ford, Inc, supra.*

It is agreed that if a question of fact exists upon
which reasonable persons may differ, the trial
judge should not direct a verdict for defendant.
Once granted, however, to determine on review
whether such verdict is proper, we must accord
plaintiff the benefit of viewing the testimony and
all legitimate inferences that may be drawn there-
from in a light most favorable to the plaintiff.
*Caldwell v Fox, supra.* We have considered other
evidence in the record which might be helpful to
plaintiff in establishing a prima facie case, yet
remain convinced that the trial court properly
directed a verdict for defendant.

A nearby resident testified that she heard a
"loud bang" from inside her home and, after walk-
ing to her doorway, saw the Holloway vehicle,
airborne, striking a telephone pole. An investigat-
ing officer testified that he observed marks with a
"scuffing effect" on the highway. He further ob-
served that the "A" frame for the right front axle

was broken. Testimony from two others was received to the effect that the chuckholes 4 to 6 inches deep and 12 to 8 inches wide with some "pretty sharp corners" were in the roadway. Plaintiff's expert witness testified that the markings on the road and the sound heard by the neighbor indicate that the separation of the lower control arm occurred while the car was on the highway and that it was quite probable that the separation was caused by the holes in the road.

This case differs from earlier decisions in significant respects. Unlike *Caldwell,* the vehicle involved in the instant case is a four-year-old, third-owner, used car which had been driven 47,000 miles. It is obvious that the longer a product has been in use the more difficult it is to prove that a defect existed while in the control of the manufacturer. We recently expressed a particular unwillingness to extend recovery in cases where the product "requires periodic maintenance, where reasonable wear is a natural consequence of normal usage, and the product has provided defect-free serviceability for a reasonable period of time".[5] Unlike *Snider,* there was no evidence of prior incidents involving the malfunction of any part of the steering or suspension systems. And, unlike *Bronson,* plaintiff was unable to effectively eliminate any other factors or circumstances which could have been responsible for the failure. We conclude that the evidence presented permits no reasonable inference that a defective ball joint assembly existed when the vehicle left the control of defendant.

We quote the summation of this case as set forth by the court below:

[5] *Kupkowski v Avis Ford, Inc, supra,* 166.

"A car left the road. A man was regrettably killed and a child injured. A piece of machinery was found broken. No one qualified to say so testimonially claimed it was too weak, too long, too short, or too anything. Neither did anyone say it was not designed correctly, the metal too light or that it was *not* too anything. Under the circumstances we feel obligated to affirm the trial judge." 60 Mich App 208, 216.

Considering both the direct and circumstantial evidence and the inferences to be drawn therefrom, we also feel obliged to agree with the trial judge.

Affirmed. Costs to appellee.

COLEMAN AND RYAN, JJ., concurred with FITZGERALD, J.

LEVIN, J. Ernest Holloway was killed and his daughter was seriously injured when his automobile struck a utility pole. Holloway had been driving at a speed of approximately 50 to 55 miles per hour along a gravel road when the car left the road. The car was four years old and had been driven over 47,000 miles.

The Holloways commenced this product liability action against the manufacturer[1] claiming that the cause of the accident was a defective ball joint in the right front wheel assembly which broke as the car traveled over chuckholes in the road.

The issue is whether the trial judge erred in directing a verdict for defendant on the ground that there was insufficient evidence of a manufac-

---

[1] Plaintiffs' theories were breach of express and implied warranties, improper design and negligence in failing to inspect the vehicle.

The complaint also alleged negligent maintenance of county roads and failure to eliminate and warn of dangerous conditions against the Eaton County Road Commission and Eaton County, issues not before this Court on this appeal.

turing defect in the wheel assembly to establish a *prima facie* case of product liability.

All agree that circumstantial as well as direct evidence may be considered in determining whether there is a *prima facie* case. We would reverse because there was sufficient evidence, albeit largely circumstantial, of product defect to require submission to the jury.

## I

The ball joint assembly was broken when examined after the accident. The principal factual dispute was whether it broke before the car left the road, causing the accident, or when the car struck the utility pole.

The testimony of four witnesses tended to show that the wheel assembly broke before the car left the road.

Police Officer Simpson testified that tire marks on the road indicated that the right front tire had been scraping sideways before it left the road, and in his opinion the wheel assembly broke before the car left the road.

Deputy Smith similarly testified that three of the tires left tread marks and the right front tire track was much wider. He also concluded that the wheel assembly broke while the car was on the road.

A Mrs. Foster, an eyewitness, testified that she had heard a loud bang before seeing the car leave the road.

Plaintiffs' expert, Joseph Harris, concluded on the basis of the tire tracks and the bang heard by the witness that the break occurred while the car was on the road and that the bumpy road was a likely cause of the breakage. He said that the bank

"marked that failure [of the wheel assembly] which is evidence[d] by those tire tracks, which then resulted in the car going off to the right".

While Harris did not testify on stress and design analysis, material strength, or other aspects of metallurgy, he was qualified as an expert in the investigation, determination and reconstruction of the causes of collisions. The judge did not err in allowing Harris to express his opinion regarding the cause of the accident.

## II

Although generally the plaintiff in a product liability case will offer expert opinion testimony that, on examination of the product, it was found to be defective, such testimony is not essential.[2] "[A] product can be proved defective by drawing reasonable inferences from circumstantial evidence without specifically proving the existence of a demonstrable defect." *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 166; 235 NW2d 324 (1975).[3]

Evidence of sudden, uncontrollable failure in the steering or braking mechanism, along with physical evidence that the damage is not attributable to the impact, may permit an inference that there was a defect and that it existed before the vehicle left the pavement.[4]

In *Hunter v Ford Motor Co,* 37 App Div 2d 335, 337; 325 NYS2d 469, 471 (1971), the driver heard a sudden noise and the left section of his truck

---

[2] *See MacDougall v Ford Motor Co,* 214 Pa Super 384, 391; 257 A2d 676, 679 (1969); *Kridler v Ford Motor Co,* 422 F2d 1182, 1186 (CA 3, 1970).

[3] Similarly, *see Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968), and *Bronson v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965).

[4] *See Necaise v Chrysler Corp,* 335 F2d 562, 568 (CA 5, 1964); *see also Nelson v Ford Motor Co,* 469 F2d 261, 262–263 (CA 5, 1972).

dropped to the road. A state trooper testified that his on-the-scene investigation disclosed gouges in the road leading toward the wrecked vehicle. Although plaintiff's expert witness found no specific defect in the axle and was unable to state precisely the cause of the break, he said that the axle had undergone a sudden "one-step" failure, that a properly designed and manufactured axle should not ordinarily break in this way, and that in his opinion it was defective. A verdict for plaintiff was affirmed.

To establish a *prima facie* case " 'the defect need not be apparent at the time the product left the factory, but may be merely a latent defect or hidden defect which later arises and causes damage' ". *Codling v Paglia*, 32 NY2d 330, 337–338; 298 NE2d 622, 625 (1973).[5] Although the occurrence of an accident does not prove that the cause was a manufacturing defect, the manufacturer's responsibility for the defect may be inferred from evidence of malfunction and other accompanying circumstances.[6] Such evidence may be sufficient to overcome evidence tending to support defendant's theory that the damage was the result rather than the cause of the collision.[7]

---

[5] The court held that the manufacturer of a defective steering mechanism may be liable for breach of implied warranty to an "innocent bystander".

[6] Prosser, Torts (4th ed), § 103, p 673. *See MacDougall v Ford Motor Co, supra*, pp 390–391 (new car steering mechanism); *Kridler v Ford Motor Co, supra*, p 1185 (same).

*See also Codling v Paglia*, 32 NY2d 330, 337–338; 298 NE2d 622, 625 (1973); *Markel v Spencer*, 5 App Div 2d 400, 404; 171 NYS2d 770, 775 (1958); *Redman v Ford Motor Co*, 253 SC 266; 170 SE2d 207 (1969).

[7] *Jenkins v General Motors Corp*, 446 F2d 377 (CA 5, 1971); *Redman v Ford Motor Co, supra; Rosin v International Harvester Co*, 262 Minn 445; 115 NW2d 50 (1962).

Directed verdicts for defendant were reversed in *Wylie v Ford Motor Co*, 502 F2d 1292 (CA 10, 1974), and *Rosin v International Harvester Co, supra*.

Although many cases in which recovery has been allowed involve relatively new vehicles[8] where the inference that the defect existed at the time the vehicle left the factory is especially compelling, the age and mileage of the vehicle go to the strength of that inference and are therefore generally questions for the jury.[9] The inference that the defect was attributable to the manufacturer has been held to be reasonable where the vehicle was driven 14,000,[10] 18,000[11] or 44,000[12] miles.

## III

My colleague states that given the age of the vehicle, the number of miles it had been driven, and that Holloway was its third owner, the inference that there was a latent defect when the car left the factory would not be justified:

"We recently expressed a particular unwillingness to extend recovery in cases where the product 'requires periodic maintenance, where reasonable wear is a natural consequence of normal usage, and the product has provided defect-free serviceability for a reasonable period of time.' [Kupkowski v Avis Ford, Inc, supra, p 166.] Unlike Snider [v Bob Thibodeau Ford, Inc, 42 Mich App 708; 202 NW2d 727 (1972)], there was no evidence of prior incidents involving the malfunction of any part of the steering or suspension systems. And,

---

[8] See Kanatser v Chrysler Corp, 199 F2d 610, 617 (CA 10, 1952), cert den 344 US 921; 73 S Ct 388; 97 L Ed 710 (1953); Hupp Motor Car Corp v Wadsworth, 113 F2d 827, 828, 829 (CA 6, 1940); Jenkins v General Motors Corp, supra; Hunter v Ford Motor Co, 37 App Div 2d 335; 325 NYS2d 469 (1971); Redman v Ford Motor Co, supra; General Motors Corp v Johnson, 137 F2d 320 (CA 4, 1943); Ford Motor Co v Kuhbacher, 518 P2d 1255 (Wyo, 1974).

[9] See Wylie v Ford Motor Co, supra, p 1294.

[10] Rosin v International Harvester Co, supra.

[11] Parker v Ford Motor Co, 296 SW2d 35 (Mo, 1956).

[12] Wylie v Ford Motor Co, supra.

unlike *Bronson [v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965)], plaintiff was unable to effectively eliminate any other factors or circumstances which could have been responsible for the failure. We conclude that the evidence presented permits no reasonable inference that a defective ball joint assembly existed when the vehicle left the control of defendant."

*Kupkowski* and *Snider* concerned brake failures. Brake systems require periodic inspection and maintenance and are expected to wear out and be replaced. In such a case regular maintenance or failure to maintain may negative an inference of manufacturing defect.

Wheel assemblies are not expected to wear out and be replaced. There was no suggestion that this assembly had been tampered with or that it is a part of the car that is expected to be or reasonably should be inspected on a periodic basis.[13]

While it may be necessary in some cases for a plaintiff to introduce evidence of proper maintenance to support an inference that the defect occurred before the product left the factory, where the defect alleged is latent in the very structure of the vehicle and may not in ordinary circumstances be discovered during routine maintenance, evidence of proper maintenance is not required.

Although "reasonable wear is a natural consequence of normal usage", it is not an adequate response to say that the vehicle is four years old, had been driven 47,000 miles and has had three owners. Automobiles are manufactured and sold for use in excess of 50,000 miles. The consumer may justifiably rely on the basic integrity of the product. A sudden failure of the wheel assembly is

---

[13] *See Markel v Spencer, supra,* where a *prima facie* case was made in part by evidence which tended to exclude tampering with the mechanism or intervening accident.

likely to cause death or serious bodily injury. The industry cannot properly expect that when the warranty period runs out the consumer will either junk the automobile or have it disassembled, inspected for metal fatigue or defect and rebuilt part-by-part, or be deemed to have assumed the risk of latent and non-discernible structural defects.

This is not to say that all parts of an automobile can be expected to function indefinitely and flawlessly without maintenance for the life of the vehicle.[14] It is to say that the manufacturer who alone is in a position to guard against the risk is subject to liability for a life-threatening latent structural defect which ticks away like a time bomb with every mile driven.

While prior malfunction of a brake system may indicate a manufacturing defect, the absence of prior malfunction does not negative the existence of a latent structural defect. A defective brake system may function intermittently; it is the nature of a wheel assembly failure that there are no "prior incidents".

Although the strength of an inference that the accident was caused by a manufacturing defect depends on the plausibility of competing explanations for the accident, plaintiffs did not have the burden of proving that the accident could only be attributable to a manufacturing defect or "of effectively eliminating any other factors or circumstances which could have been responsible for the failure". It was enough that they indicated "a logical sequence of cause and effect * * * notwithstanding the existence of other plausible theories

---

14 *Triplett v American Creosote Works, Inc,* 251 Miss 727, 735; 171 So 2d 342, 346 (1965); *Jakubowski v Minnesota Mining & Manufacturing Corp,* 42 NJ 177, 184; 199 A2d 826, 830–831 (1964); *Gomez v E W Bliss Co,* 27 Misc 2d 649, 651; 211 NYS2d 246, 248 (1961).

with or without support in the evidence". *Sche-dlbauer v Chris-Craft Corp,* 381 Mich 217, 220, fn 1; 160 NW2d 889 (1968).[15] They were "not required to offer evidence which positively exclude[s] every other possible cause of the accident". *Swensson v New York, Albany Despatch Co,* 309 NY 497, 502; 131 NE2d 902, 904 (1956).

Defendant's theory was that the cause of the accident was Holloway's loss of control of the car and that the wheel assembly broke on impact. Defendant suggested no other explanation for the breakage. Plaintiffs negatived that theory with evidence tending to show that the break occurred before the car left the road. Defendant made no claim that such a break "is a natural consequence of normal usage" or that it was attributable to improper maintenance.

In sum, the jury could reasonably infer that the wheel assembly broke before the car left the road. A defect in the wheel assembly involves the basic structural integrity of the vehicle and may not be discoverable during periodic maintenance. There is no suggestion that this wheel assembly had been tampered with or improperly maintained. A jury could reasonably conclude that there was a defect and that it was latent until the wheel assembly broke without warning causing the accident or, alternatively, it could accept the manufacturer's explanation that it broke when the vehicle struck the utility pole and did not cause the accident.

Plaintiffs sustained their burden by introducing evidence from which the jury could reasonably infer that the accident was caused by a manufacturing defect, even though that was not the only inference that might have been drawn. "As on

[15] The Court reaffirmed the rule adopted in *Kaminski v Grand Trunk W R Co,* 347 Mich 417, 422; 79 NW2d 899 (1956).

other issues in civil actions, [in a product liability case] it is enough that he makes out a preponderance of probability. It is enough that the court cannot say that reasonable men on the jury could not find it more likely than not that the fact is true." Prosser, Torts (4th ed), § 103, p 673.

The trial judge erred in directing a verdict. We would reverse and remand for a new trial.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.