Rodney **SUNDBERG**, Plaintiff,

v.

**KELLER LADDER, a/k/a Keller Ladder Division, and Relleck Industries, Inc., f/k/a Keller Industries, Inc., Keller Ladders, Inc., and Builders Square, Inc., Defendants.**

No. 00–10117–BC.

United States District Court,
E.D. Michigan,
Northern Division.

March 21, 2002.

Paul L. Kaliszewski, Southfield, MI, for Plaintiff.

Edward J. Higgins, Plunkett & Cooney, Detroit, MI, James D. Wilson, Plunkett & Cooney, Ann Arbor, MI, Michael D. Fishman, Rader, Fishman, Bloomfield Hills, MI, Paul V. Kaulas, Purcell & Wardrope, Jonathan P. Schaefer, Purcell & Wardrope, Chicago, IL, for Defendants.

### OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND CLARIFYING PREVIOUS ORDER PRECLUDING PLAINTIFF'S USE OF EXPERT TESTIMONY

LAWSON, District Judge.

The plaintiff in this case alleges that he was injured by an aluminum extension ladder which he purchased from Builders Square, Inc., in Canton, Michigan. The ladder, manufactured by defendant Keller Ladders, Inc., was rated at a capacity of 200 pounds. The plaintiff contends that on March 1, 1997 he mounted the ladder at his full weight of 150 pounds, and that the ladder collapsed; he was injured by the resulting fall to the ground.

The plaintiff filed a product's liability action in the Iosco County Circuit Court alleging negligence in the design and manufacture of the ladder and breach of express and implied warranties. The defendants timely removed this case to this Court.

A case management order was entered, and thereafter the defendants filed a motion for sanctions because of repeated discovery and disclosure violations concerning expert witnesses, whom defendants believed should be precluded from testifying in the case. The defendants also moved for summary judgment, reasoning that because expert testimony was essential to all of the plaintiff's claims, they could not be proved at trial without it. On November 8, 2001, this Court filed an opinion and order precluding the plaintiff from calling an expert witness at trial, dismissing the plaintiff's negligent design and manufacturing claims, and permitting the plaintiff's breach of warranty claims to proceed.

The defendants have now filed a motion for reconsideration, claiming that this Court's decision contains several palpable defects. First, the defendants state that the opinion improperly concluded that the standard of liability for breach of warranty is different from that for a claim for negligent design or manufacture. Second, the defendants claim that the Court improperly found that an implied warranty claim is equivalent to strict liability. Third, the defendants contest the conclusion that the plaintiff provided evidence of circumstances sufficient to give rise to an inference of defect traceable to the manufacturer. Fourth, the defendants suggest that the plaintiff has made no affirmative showing, going beyond his pleadings, that any warranty was breached at any time. The Court ordered a response from the plaintiff, which was filed, and the matter is now ready for decision.

The Court finds that the defendants have not made the necessary showing to justify reconsideration and that the Court's original decision was correct. The defendants have not properly characterized the state of Michigan product liability law concerning breach of warranty claims, they have misrepresented the holding of state law precedent, and they failed to demonstrate a palpable defect in this Court's prior decision. The motion for reconsideration will be denied.

## I.

 The Court will grant a motion for reconsideration if the moving party shows: (1) a "palpable defect," (2) that the defect mislead the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.,* 177 F.Supp.2d 605, 624 (E.D.Mich.2001). Further, the Local Rules also provide that any "motion for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(g)(3).

## II.

## A.

The defendants first argue that the elements of a claim for negligent manufacturing and design, and one for breach of warranty are the same, and the Court's contrary conclusion was erroneous. The defendants contend that the implied warranty theory originally functioned as a form of strict liability in tort, requiring only proof that a "defect" existed at the time the subject product left the control of the defendant. *See Piercefield v. Remington Arms Co.,* 375 Mich. 85, 133 N.W.2d 129 (1965). As time went by, the argument goes, the application of this doctrine evolved such that the standard of liability for breach of implied warranty in design and warnings cases was identical to the standard of liability for negligence. The defendants refer to *Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476

(1979), and *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984). Directing the Court to *Holdsworth v. Nash Mfg. Inc.*, 161 Mich.App. 139, 409 N.W.2d 764 (1987), the defendants assert that even though plaintiffs are not required to prove negligence in a manufacturing defect case, the existence of a defective condition in such a case is nevertheless measured by a negligence standard.

Thus, the defendants conclude that the Court's opinion contains several errors. First, they are critical of the Court's citation to *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731 (6th Cir.2000), for the proposition that "requirements for an implied warranty cause of action ... are less stringent" than for a negligence cause of action because that case referred to implied warranty claims against non-manufacturing sellers, and the case specifically held that the requirements are identical when the manufacturer manufactured the subject product. The *Hollister* Court specifically noted:

> Hollister's and the district court's confusion as to the appropriate legal standard most likely stems from the fact that, in cases where a seller is also the manufacturer, Michigan courts have observed that claims of negligence and breach of implied warranty are, for all intents and purposes, identical. The reason for this confluence is that a plaintiff alleging breach of implied warranty on the part of a seller must show that the purchased product was defective. That showing, in turn, requires proof that the product's manufacturer acted negligently, typically by omitting a safety feature or in failing to give warning of a latent danger. A suit for breach of implied warranty against a seller who is also the manufacturer will therefore require the same showing of negligence on the de-

fendant's part as an ordinary products liability suit against a manufacturer.

*Hollister*, 201 F.3d at 736–37.

The defendant also expressed dismay at the Court's treatment of *Bouverette v. Westinghouse Electric Corp.*, 245 Mich. App. 391, 628 N.W.2d 86 (2001), without paying due regard to the defendants' rather unremarkable attempt to distinguish it. The case does contain the following language:

> Although in a design defect case the trier of fact must apply "a risk-utility balancing test" that considers alternative safer designs and the accompanying risk pared against the risk and utility of the design chosen, *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 13, 538 N.W.2d 325 (1995), no such analysis is required in a failure to warn case.

*Id.* Referring to this quote, the defendants note that the implied warranty claim in that case was based on a *failure to warn*, which has not been pleaded in this case. *See id.* The defendants also contend that the case says nothing about implied warranty liability standards being distinct from negligence; the only thing the court did was attempt to reconcile inconsistent jury verdicts. Finally, the defendants conclude that the *Bouverette* court was considering evidence of "defect" proffered by an expert witness, and the plaintiffs cannot prove a "defect" without expert testimony.

The defendants' argument must be rejected for several reasons. Initially, the defendants purport to outline the history of products liability that reflects Michigan case law, but the summary more closely resembles the process leading to the adoption of the *Restatement (Third) of Torts: Products Liability* (1998), with occasional Michigan citations inserted for appearances. According to the *Restatement*, modern products liability began with strict liability for unreasonably dangerous prod-

ucts under Section 402A of the *Restatement (Second) of Torts.* That section then evolved into the recognition of three types of product defects: manufacturing defects, design defects, and information defects from failure to warn. Subsequently, many scholars and states suggested that strict liability was inappropriate for design defect claims and recommended a negligence standard for both design and information defects, but retained strict liability for manufacturing defects. Although the separate action of "implied warranty" had long co-existed with more formal product liability tort actions, it became duplicative and confusing. *See Restatement (Third) of Torts: Products Liability* § 2 (1998) and analysis therein.

It is true that the modern history of products liability in Michigan began with *Piercefield v. Remington Arms,* but the Court cannot accept the defendants' attempt to revise the history of Michigan products liability law from *Prentis* onward. The defendants incorrectly state that after *Prentis* the implied warranty theory applied only to cases alleging proven manufacturing defects. That is not true, and not surprisingly, the defendants provide no citation for this declaration. As the Court previously stated in its Opinion and Order, a cause of action for implied warranty requires that the plaintiff show (1) that the product in question was somehow defective when placed in the stream of commerce; and (2) that this defect caused her injury. *See Piercefield,* 375 Mich. at 96, 133 N.W.2d at 134. As previously discussed, one option plaintiffs have when establishing a "defect" is simply to allege that the product is not reasonably fit for its intended, anticipated, or reasonably foreseeable use. *Gregory v. Cincinnati, Inc.,* 450 Mich. 1, 34, 538 N.W.2d 325, 339 (1995). The defendants cite no case, and the Court has not located one, that requires the plaintiff to specify the exact product defect in every implied warranty case. In fact, as

the Michigan Court of Appeals explained in *Snider v. Bob Thibodeau Ford, Inc.,* 42 Mich.App. 708, 717, 202 N.W.2d 727, 732 (1972), the exact type of defect need only be specified when there is more than one credible source to which a product failure could be attributed. Thus, in *Meli v. General Motors Corp.,* 37 Mich.App. 514, 195 N.W.2d 85 (1972), where the plaintiff blamed an accident on a broken accelerator spring, but could not isolate a possible manufacturing defect that would have caused the accident, the Court found that the trial court properly granted a directed verdict to the defendant. In addition to having been driven for over 32,000 miles, the vehicle had been serviced numerous times. Because the accelerator spring had been exposed during service, there was no reason to conclude that a defect in manufacture was any more likely than negligent service to have been the cause of the accident. *Id.* at 518–19, 195 N.W.2d 85, 202 N.W.2d at 87–88. The court in that case found that more detail was required to prove the claim.

Although it is probably likely that most implied warranty claims will concern manufacturing defects, that need not be the case. The plaintiff is under no obligation to specify his perceived defect when suing under a warranty theory, nor to offer expert testimony as to its existence. To the extent that he chooses not to specify a defect or offer expert testimony, he may very well do so at his peril; however that strategic decision, although perhaps unwise, does not compel judgment as a matter of law for the defendants. In support of a contrary result, the defendants reiterate their reliance on *Moisenko v. Volkswagenwerk Aktiengesellschaft,* 100 F.Supp.2d 489, 492–93 (W.D.Mich.2000), without addressing this Court's discussion of that case in its Opinion. *Moisenko* held that expert testimony was required to de-

termine a manufacturing defect in a Volkswagen automobile. As discussed in its Opinion, the Court finds *Moisenko* to be distinguishable, as the plaintiff in that case was trying to prove a specific manufacturing defect; the plaintiff in this case is not. *See* Opinion at 13. A breach of warranty claim does not *require* this level of specificity.

Second, the defendants claim that the Court incorrectly interpreted Sixth Circuit precedent when it relied on *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731 (6th Cir.2000), for its holding that implied warranty and design defects were distinct causes of action. It is true that the analogy between that case and the one presently before the Court is imperfect with respect to the distinction employed in *Hollister* between design defect and implied warranty claims. There, the plaintiff attempted to use both design defect and implied warranty theories to sue the seller of a sweater which caught fire, with the alleged warranty defect being the failure to warn. In that case, *under those facts*, the Sixth Circuit found that both claims would require a showing of negligence. There is nothing radical about this finding, as it has long been established in Michigan that both defective design and failure to warn claims are governed by a negligence standard. *Prentis*, 421 Mich. at 690–91, 365 N.W.2d at 185–86 (defective design); *Smith*, 405 Mich. at 91, 273 N.W.2d at 480 (failure to warn) Although the language cited by the defendants is quite sweeping, probably overly so, the defendants must recall that the precise questions in this case-whether an implied warranty defect need be specified and whether implied warranty claims always require proof of negligence-were not before the *Hollister* Court.

Furthermore, even if *Hollister* could be extrapolated to discourage the claim in this case, its precedential support would be weakened by the intervening decision of *Bouverette v. Westinghouse Electric Corp.*, 245 Mich.App. 391, 628 N.W.2d 86 (2001). *See Perez v. Brown & Williamson Tobacco Corp.*, 967 F.Supp. 920, 926 (S.D.Tex.1997) (recognizing that district courts may not be bound by appellate determination of state law when intervening state court decision issues a clearly contrary holding). As discussed in the Court's Opinion and Order, the plaintiff in *Bouverette* successfully sued when her decedent was electrocuted by a circuit breaker that had been manufactured by the defendants. The defendants appealed the jury verdict for the plaintiff, claiming that the verdict for the manufacturer on negligence grounds but for the plaintiff on implied warranty grounds was necessarily inconsistent, and that the violation of an implied warranty could not occur without negligence. *Id.* at 398, 628 N.W.2d at 92. First, the Court found that the jury could have limited its negligence analysis to manufacturing and design claims, while treating failure to warn as a separate implied warranty issue. *Id.* at 398–99, 628 N.W.2d at 92. Second, and more importantly, the Court reaffirmed the well-established principle in Michigan law that a product could be "defective" without having a traditional "defect" in the product liability sense:

> Moreover, the jury could have found that the breaker itself *technically was not defective, but that it was not reasonably fit for the uses intended or foreseeable,* i.e., the safety features failed when connected to a linkage handle, which was an intended or foreseeable use.

*Id.* at 399, 628 N.W.2d at 92 (emphasis added).

The defendants attempt to distinguish the case by saying that the case involved expert testimony and concerned a failure to warn implied warranty claim, which is not alleged in this case. The defendants'

analysis, however, completely ignores the above-cited passage, which was quoted and relied upon by the Court in its Opinion and Order. The passage clearly states that even if none of the three types of "defects" (i.e., design, manufacture or warning) could support the jury's finding, the jury could still have found that the product failed to function adequately for its foreseeable use. In other words, even if the defect could have been cabined into a manufacturing, design or information defect, it could also be generally described merely as the product's failure to perform adequately for its intended use.

■ It is apparent that Michigan law defining products liability causes of action for breach of warranty does not require the plaintiff to plead and prove a specific defect, and that the failure of the product to perform as represented or in a manner reasonably consistent with its intended and foreseeable use will support such a claim.

### B.

The defendants next argue that this Court has improperly confounded claims of implied warranty with strict liability, and that the state law authority referenced in the opinion has been discredited. *See Dooms v. Stewart Bolling & Co.*, 68 Mich. App. 5, 241 N.W.2d 738 (1976); *Cook v. Darling*, 160 Mich. 475, 125 N.W. 411 (1910). Specifically, the defendants state that the *Dooms* Court recognized that the Michigan Supreme Court has repeatedly held that strict liability does not exist in this state, and that *Cook* is a graybeard case concerning an action for assumpsit which predates modern products liability law by several decades.

■ The defendants' analysis is unconvincing. First, the defendants do not deny that implied warranty and strict liability theories are very closely related. However, the requirements are not identical: whereas strict liability in its traditional

sense requires a showing that the product was "unreasonably dangerous," an implied warranty can be violated by merely showing that the product was not fit for its ordinary use. *See Dooms*, 68 Mich.App. at 14, 241 N.W.2d at 743 (holding it not erroneous to instruct on strict liability instead of implied warranty, where violation of strict liability standard necessarily results in violation of implied warranty); *see also* Dan Dobbs, *Law of Torts* § 352, at 971 (2000) ("Liability for breach of warranty is ordinarily strict liability: liability results from breach even if the defendant used reasonable efforts to perform.")

The defendants attempt to distinguish *Dooms* by citing its acknowledgment that some Michigan decisions have expressed hostility toward strict liability. Those references, however, discuss disarray in nomenclature where courts have confused "absolute liability" (i.e., liability without fault or defect) with "strict liability" (liability for defect). *See Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970) (discussing the distinction). The *Dooms* Court, however, provided a clarifying gloss explaining that in an implied warranty claim the "strict" liability which it imposes is not the "liability without fault" that has concerned Michigan courts in the past because a defect still must be shown. *See Dooms*, 68 Mich.App. at 14, 241 N.W.2d at 743 n. 3.

The defendants also disparage this Court's reliance on *Cook v. Darling*, 160 Mich. 475, 125 N.W. 411 (1910), claiming that the case's "archaic analysis in an action for assumpsit cannot support a conclusion" that the plaintiff in this case raises a strict liability claim. The Court is quite aware that *Cook* predates the products liability revolution. However, the case was cited for two reasons. First, it was cited and relied upon by the *Dooms* Court in an opinion which this Court has found to

contain a cogent discussion of the relationship between strict liability and implied warranty claims. Second, the case demonstrates the venerable lineage of implied warranties, and the "strict accountability" to which violators are held, regardless of the product sold.

■ Thus, breach of implied warranty is a distinct cause of action that imposes "strict" liability upon a manufacturer who fails to produce a product that is fit for its ordinary, foreseeable use.

### C.

The defendants also argue that the plaintiff has failed to come forward with sufficient evidence to warrant a trial because, according to the defendant's analysis of the precedents, the facts in the record will not support an inference that the ladder was defective when it left the control of the manufacturer. Positing that a plaintiff must prove the existence of a defective condition *that existed at the time the subject product left the control of the manufacturer*, the defendants attempt to distinguish the cases of *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975), and *Snider v. Bob Thibodeau Ford, Inc.*, 42 Mich.App. 708, 202 N.W.2d 727 (1972), which recognize that circumstantial evidence is often sufficient to support this element of the cause of action.

The defendants direct the Court's attention to *Holloway v. General Motors Corp.*, 399 Mich. 617, 250 N.W.2d 736 (1977), in which, according to the defendants, the Michigan Supreme Court refused to extend the reasoning of *Snider* to the plaintiff in that case. In that case, a front-wheel ball joint failed resulting in an accident. The vehicle in *Holloway*, unlike the car in *Snider*, was four years old, was on its third owner, and had been driven 47,-000 miles. There was no indication of prior problems with the ball joint. Accordingly, permitting the case to go to the jury would have invited speculation, say the defendants.

The defendants also cite *Meli v. General Motors Corp., supra*, in which the accelerator spring in the plaintiff's vehicle was found disconnected after the accident, and the plaintiff alleged that the spring was defective. The Michigan Court of Appeals rejected that claim, noting that the part at issue was not "enclosed" like the brake mechanism in *Caldwell*, in which a manufacturing defect was inferred. The spring in *Meli* was exposed, and the vehicle had been serviced several times. Because there was no evidence to remove the case "from the realm of conjecture," the Court upheld the trial court's decision to grant a directed verdict.

The Michigan Supreme Court discussed *Caldwell* again in *Kupkowski v. Avis Ford, Inc.*, 395 Mich. 155, 235 N.W.2d 324 (1975). The defendants here argue that the Court distinguished the *Kupkowski* vehicle from the new vehicle in *Caldwell*. The *Kupkowski* plaintiff had owned the vehicle for thirty-six days prior to the date of accident, had driven it at least 1800 miles, and had had no problems with the brake system prior to the accident.

The defendants argue that these cases compel the conclusion that circumstantial evidence will not suffice to prove that a product which had seen some use in the field was defective when it left the hands of the manufacturer.

To address this argument, a more careful reading of the decisional law in light of the record in this case is required. The defendants correctly state that the ladder in this case had been used for roughly two years without incident, Sundberg dep. at 165–66, that the plaintiff had never detected any structural weakness in the ladder previous to this incident, *id.*, that the "flylock" that the plaintiff posits as a potential cause of the accident was exposed, and

that there is no direct evidence of a defect attributable to the manufacturer. On the other hand, the plaintiff has testified that he never modified or serviced the ladder in any way, Sundberg dep. at 159, 193–94, that he weighed only 150 pounds, *id.* at 3, and that the ladder unexpectedly slipped down a few rungs, leading to the plaintiff's fall and injury. *Id.* at 185–88. The parties have stipulated to the model of the ladder, *see* Joint Final Pretrial Order at 4, and the defendants do not seem to dispute that the ladder has a 200 pound duty rating. *See, e.g.,* M. for Recons. at 16.

The ladder in this case is not a complex piece of machinery like an automobile. This case is much more simple. The plaintiff testified that he purchased the ladder in question from Builders Square in 1995. Sundberg dep. at 144. He testified that he never made any repairs to it at any time. *Id.* at 193–94. He testified that nothing was bent or otherwise out of order before the accident. *Id.* at 161–64. The plaintiff also testified that on the accident day, March 1, 1997, he placed the ladder up against a tree, climbed up the ladder until he reached two rungs above the flylocks, and proceeded to cut off a branch with a chainsaw. *Id.* at 13, 169–75. He subsequently felt his portion of the ladder slip down a few rungs, lost his balance, and fell. *Id.* at 185–89.

When deciding a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). In this Circuit, when a motion for summary judgment is before the Court, direct evidence offered by the plaintiff must be

taken as true. *See Tompkin v. American Brands,* 219 F.3d 566, 571 (6th Cir.2000).

■■■■ A jury presented with these facts need not "speculate" as to the cause of this accident. The facts present at least three viable inferences: a defective ladder, a poorly-maintained ladder whose defects were not attributable to the manufacturer, the plaintiff's misuse, or some combination of the three. The plaintiff is not required to eliminate all possible alternate causes of accident, even when other plausible theories have some evidentiary support. Rather, under Michigan law, a plaintiff need only provide a logical sequence of cause and effect from which a reasonable jury could infer a defective product. *Mulholland v. DEC Int'l Corp.,* 432 Mich. 395, 415, 443 N.W.2d 340, 349 (1989). "Questions of comparative probability are to be resolved by the trier of fact." *Id.* (citing *Holloway,* 403 Mich. at 614, 271 N.W.2d at 780). *See generally* Dobbs, *Torts* § 352, at 971 (noting that plaintiff whose ladder collapses at 200 pounds when it is rated for 500 pounds may state a claim for breach of warranty). Federal procedural law is no more stringent. *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 151–152 (6th Cir. 1995); *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 505 (6th Cir.1996) ("[A] party may rely upon circumstantial and inferential evidence to defeat a . . . summary judgment motion."). The plaintiff's evidence suffices. The defendants may attempt to disprove the plaintiff's testimony, but they must do so at trial.

■■■ More disturbing is the defendants' frank misrepresentation of the ultimate holding of *Holloway v. General Motors Corp.* The defendants' reference to that decision is limited to the opinion at 399 Mich. 617, 250 N.W.2d 736 (1977) ("*Holloway I* "), in which an equally divided Michigan Supreme Court upheld the decision of the court of appeals dismissing the case. The defendants fail to inform the Court,

however, that the Michigan Supreme Court subsequently granted rehearing and reversed both that decision and the court of appeals in *"Holloway II,"* 403 Mich. 614, 271 N.W.2d 777 (1978). *Holloway II* specifically rejected the notion that the plaintiff must present a specific defect to the Court to prevail in a products liability action.

Acknowledging that encouraging tortfeasors to adopt corrective measures is one of the purposes of the tort law, another purpose is to compensate injured persons. It is the injury inflicted on the plaintiff that entitles him to a remedy, not his skill in discovering precisely where defendant's manufacturing process went wrong.

Just as a plaintiff injured in an automobile collision need not identify a character or other personality defect which caused the defendant to drive negligently, either to educate him or others so that remedial measures may be adopted or to facilitate governmental determination of whether he should be permitted to continue to drive, neither need a person injured by product failure identify the specific defect.

*Id.* at 626–27, 271 N.W.2d at 783. The Court further found that expert testimony was not required for the plaintiffs to prevail, partly because the defense expert had lent his credibility to the problems surrounding the ball bearing at issue.

[T]he Holloways were at liberty to establish that there was a reasonable probability of a manufacturing defect in the assembly in the direct or circumstantial evidence. A manufacturing defect can be proved by circumstantial evidence without expert opinion testimony. Accordingly, the Holloways were not under an obligation to present a metallurgist's view of the matter.

*Id.* at 629, 271 N.W.2d at 784.

■ The defendants also do not disclose the entire story about the vehicle in *Kupkowski v. Avis Ford, Inc., supra.* That vehicle was over three years old at the time of the accident, had over 58,000 miles, and had gone through at least one previous owner and two dealerships. 395 Mich. at 162, 235 N.W.2d at 328. The Court noted, in a passage cited by the defendants, that the car had been used for a few months without incident by the plaintiff during which he drove approximately 1,800 miles. *Id.* at 163–64, 235 N.W.2d at 329. That case is readily distinguishable from the one at bar. The defendants have yet to challenge the chain of custody for the ladder in this case. The ladder, an uncomplicated device, had been owned for only about two years. *Kupkowski* presents no obstacle to the plaintiff's recovery.

The plaintiff in this case has alleged, among other things, a breach of implied warranty. The plaintiff may resort to circumstantial evidence to support his theory, especially since the ladder is a simple device. Although expert testimony would be helpful to the plaintiff, he is not required to offer it as a matter of law.

### D.

Finally, the defendants argue that the plaintiff has not adequately developed his express warranty theory, and therefore he should not be allowed to proceed to trial. The defendants contend that the plaintiffs have never specified the express warranties that they believe to have been violated. The complaint, as this Court observed in its Opinion, merely "alleges breach of various unspecified express warranties." In their reply brief, the defendants point out that, despite the plaintiff's failure to identify an express warranty theory in his pretrial statement, he still claims not to have abandoned it. The reply brief also insists that the plaintiff had failed to explain the nature of any such theory or

articulate the substance of any such warranty made by the defendants. The defendants argue that the plaintiff's failure to go beyond his pleadings entitles the defendants to summary judgment pursuant to Fed.R.Civ.P. 56(e).

■ At the hearing on the defendants' motion, plaintiff's counsel argued that the "express warranty" was the duty rating of 200 pounds, and that the warranty was breached because the ladder failed to support plaintiff, who weighs much less than that amount. The defendants believe that the fact that they have not yet challenged the circumstances surrounding the plaintiff's fall is irrelevant because it is the plaintiff's job, not the defendants, to prove the existence of a defect and its causal connection to the injury suffered. *Kupkowski*, 395 Mich. at 163, 235 N.W.2d at 328–29. The defendants argue that it was the plaintiff's burden in the first instance to offer evidence that the ladder was capable of collapsing under the weight of a normal person when it left the manufacturer.

The defendants' motion for summary judgment was filed on the basis of a discovery dispute and the effect of their sought-after sanctions on the merits. However, the defendants never challenged the express warranty claims until they filed their reply brief. In their motion for sanctions and summary judgment, the defendants requested (1) dismissal of the entire case or (2) preclusion of all experts for the plaintiff. Apparently the defendants were relying on their belief, repeatedly reiterated to both the Magistrate Judge and this Court, that if outright dismissal was not granted, the absence of expert testimony would guarantee a de facto dismissal anyway. *See, e.g.,* Def.'s M. for S.J. ¶ 14. The defendants also apparently believed that the failure of the plaintiff to mention a warranty theory independent of defective design in his Pre Trial Statement constituted some sort of waiver of any other defect with respect the warranty claims. Def.'s M. for S.J. ¶ 3. Once this Court found to the contrary on both counts in its Opinion, the defendants were then caught in an awkward position: the design defect claims were gone, as were the plaintiff's experts, but the plaintiff's warranty claims were still alive. This result is a direct consequence of the defendants' poor, yet deliberate, tactics.

It would be inherently unfair to now permit the defendants to challenge the plaintiff's claims on the basis that no evidence was offered when the plaintiff had no fair notice that such a showing was necessary. Once the discovery issue was decided, the defendants could have requested permission to file an additional or supplemental summary judgment motion on the merits of the express warranty claim in light of the unusual procedural posture of their previous motion. Instead, the defendants chose to rely on the generalized assertion in their reply brief that the plaintiff had not come forward with a theory of warranty or how it was breached. To credit such an argument is to ignore the fundamental premise that it is still the *defendants'* burden at the summary judgment stage to make a timely initial showing that the plaintiff lacks evidence for a claim. *Smith v. Campbell,* 250 F.3d 1032, 1036 (6th Cir.2001). Only when the defendants have made such a claim does the burden then shift to the plaintiffs. *Id.* The defendants' failure to raise their warranty argument in a proper, subsequent summary judgment motion on the merits has relieved the plaintiff of the burden to come forward with specific facts. *See Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 725–26 (6th Cir.2000).

■ The defendants contend that they raised the issue of the sufficiency of the plaintiff's warranty claims in their reply brief. However, it is not the office of a

reply brief to raise issues for the first time. *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir.1993). The defendants also argue that they had no notice of the express warranty claim until the plaintiff resurrected it in his response to the defendants' motion to preclude expert testimony and for summary judgment. That argument also lacks merit. The warranty claims are pleaded in the complaint. If the defendants wanted properly to challenge the plaintiff's case on the merits before trial, they should have sought leave to file the additional motion. They did not pursue that avenue, and neither their reply brief nor their motion for reconsideration will serve as an acceptable substitute.

### III.

Based on comments made by the plaintiff's counsel at the final pretrial conference, and in light of the motion *in limine* which has been filed, the Court finds it prudent to clarify the scope of the preclusion order entered pursuant to the defendants' discovery sanction motion. At the final pretrial conference, the plaintiff expressed his belief that he was entitled to present expert testimony in rebuttal, despite the clear order of this Court that expert testimony was precluded as a consequence of the repeated discovery and disclosure violations.

The basis of the plaintiff's belief is language used by the Magistrate Judge in ruling on the defendants' discovery motion suggesting that experts would only be precluded in the case-in-chief, with rebuttal testimony to be considered after the close of the defendant's case. In fact, the transcript of the discovery motion hearing does disclose that Magistrate Judge Binder specifically recommended "that Plaintiff not be allowed to present expert testimony during his case in chief for the reason that the expert disclosure made by counsel for Plaintiff was filed late." 6/7/2001 Tr. at 14. The Magistrate Judge did not indicate that this use of language was intended as a limitation of the preclusion sanction. Further, the Opinion and Order subsequently entered by this Court states that "the Court finds that the Magistrate Judge recommended an appropriate sanction against the plaintiff, and therefore the defendants' objection to this portion of the Report and Recommendation shall be overruled." Opinion and Order at 7. The operative language, however, states: "It is further ORDERED that the plaintiff shall be precluded from presenting expert testimony at trial." *Id.* at 14.

This Court finds no basis for permitting an essentially non-disclosed expert to testify in rebuttal but not in the case-in-chief. Permitting the expert to testify in rebuttal eviscerates the sanction. The Court intends to enforce the plain language of the prior order. The plaintiff will not be permitted to call his expert witness in his case-in-chief or on rebuttal.

### IV.

The defendants have failed to persuade the Court that its prior decision in this case was erroneous in any respect, and have not established entitlement to reconsideration. Expert testimony is not an absolute requirement to establish the elements of the plaintiff's breach of warranty claims. If it were, the plaintiff's claims would be precluded, inasmuch as expert testimony will not be permitted.

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration [dkt # 60] is hereby **DENIED**.

It is further **ORDERED** that the testimony of the plaintiff's expert witness, Mr. Harold Josephs, is barred and the plaintiff will not be permitted to call this witness in his case in chief or in his rebuttal case.